**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

THOMAS CUNNINGHAM,

    Plaintiff,

vs.   Civil No. 07-411 RB/RHS

PETER HACKETT, et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2) and FED. R. CIV. P. 12(b)(6), on review of Plaintiff's civil rights complaint. In addition, the Court has considered the record in this case, including the City Defendants' Martinez Report ("MR"), filed June 28, 2010 **[Doc. 109]** and the Plaintiff's responses to the MR, (see The Defendant's [sic] Failed to Fully Comply with the Court's Order to Address Each Point Set Out in the MR **[Doc. 111]** and Motion in Opposition to Defentant's [sic] Legal Argument ("MR Response") **[Doc. 112]**, both filed Jul. 9, 2010).

### *Background*

*Plaintiff's contentions regarding events of February 28, 2006*

Plaintiff's allegations regarding events that occurred on February 28, 2006 form the basis of part of Plaintiff's Claim I and all of Claims V through IX set forth in his Complaint. Plaintiff alleges that on February 28, 2006, "in an arbitrary and unconstitutional act of discriminatory harassment[,]" Defendants engaged in unlawful racial profiling.[1] (Complaint at 7 (Claim I) **[Doc. 1]**). Plaintiff alleges that Defendant Ryan unlawfully seized him "as [Plaintiff] and four other[s]

---

[1] An Offender Booking Sheet, dated 2/28/2006, identifies Plaintiff's race as Black. (Ex. I, attached to MR).

waited to enter" a motel room.  (Id. at 8 (Claim V)).  Plaintiff alleges that "[a]s [D]efendant Ryan got out of his car he order[ed] the Plaintiff to hold up, and to have a set [sic] on the walk while two of the four people were allow[ed] to leave."  (Complaint at 8 (Claim V)).  Plaintiff alleges that "this constituted a seizure because I did not feel that I could just walk away."  (MR Response at 3).  Plaintiff contends that he "and 4 others standing on the sidewalk in front of a room without more will not justify a seizure."  (Id. at 4-5 (citing State v. Cobbs, 103 N.M. 623, 711 P.2d 900 (Ct.App. 1985); State v. Watley, 109 N.M. 619, 624, 788 P.2d 375, 380 (Ct.App. 1989)).

Plaintiff contends that Defendant Ryan engaged in police misconduct by intimidating Plaintiff, and "ma[king] it seem that if the Plaintiff was not suppose[d] to be at that room, that he would be going to jail."  (Complaint at 8-9 (Claim VI)).  Plaintiff contends that "[i]n an attempt to get [Defendant Ryan] to leave me alone . . . I falsely and unwisely said it was my room."  (Complaint at 5).  Plaintiff alleges that Defendant Ryan then "conducted an unwarranted and illegal search and seizure under the pretext of a[] protective sweep."[2]  (Id. at 9 (Claim VII)).  Plaintiff claims that Defendant Ryan "went into the room for about 7 to 10 minutes and when he came out he placed me in handcuffs . . . . arresting me for drug paraphelia [sic] which he brought out of the room."  (Complaint at 6).  Plaintiff asserts that Defendants unlawfully arrested him for possession of evidence (drug paraphernalia) seized from the motel room because "they knew it was not his room."[3]  (Complaint at 10-11 (Claim IX)).

---

[2]Plaintiff alleges that Defendant Ryan "went in the [motel] room . . . when he could plainly see there was no one in it, because the door was left open once he ask[ed] the two people he had just let enter to come out."  (Complaint at 9 (Claim VII)).  Defendant Ryan then "used a protective sweep to enter the room an[d] search for evidence of a crime.  He then removed evidence without a warrant which exceeded the scope of the protective sweep."  (Id.).

[3]Plaintiff contends that Defendants "inspired another" false arrest by making a false statement to his probation officer.  (Complaint at 10-11 (Claim IX) (asserting that Defendants

2

Finally, Plaintiff claims that Defendants "filed a false criminal complaint alleging the Plaintiff possessed drug paraphelia [sic] and falsely obtain[ed] services." (Complaint at 10 (Claim VIII)). Plaintiff contends that he "was never in possession of paraphelia [sic][,]" and that Defendants charged him with evidence found in the room although they "knew that the Plaintiff was not the registered guest of the room." (Complaint at 10 (Claim VIII)). Plaintiff alleges that Defendants' question of how much he paid to stay at the room "was a trick one, because being that I did not stay at the room, my obvious answer would be 'nothing'." (Complaint at 10 (Claim VIII)).

*Defendants' contentions regarding events of February 28, 2006*

Defendants contend that on February 28, 2006, they were patrolling the area of the America's Best Value Inn "in response to numerous complaints by citizens of drug activity in the area." (Incident Report at 2, Ex. H, attached to MR[4]; see also Criminal Complaint, Ex. L; Affidavit for Peter Hackett ("Hackett Aff."), Ex. O; Affidavit for Duffy Ryan ("Ryan Aff."), Ex. P). While patrolling the area, they observed five individuals, including Plaintiff, exiting from room 115. Having recently spoken to hotel management, Defendants "knew that there was only one registered guest [Valerie Gallegos] in that room." (Incident Report at 2, Ex. H). Defendants also knew that hotel management charged per occupant, and that there had been a recent report of a burglary at the hotel in which the offenders had forced entry into a room to use the room without paying. (See Criminal Complaint, Ex. L).

Defendants stopped three of the five individuals "in order to conduct an investigation into

---

falsely reported to Plaintiff's probation officer that Plaintiff possessed drug paraphernalia, at which point the "probation officer issued an arrest order for him").

[4] All exhibits referenced in this document are attached to the MR, unless otherwise indicated.

3

a possible charge of falsely obtaining services." (Criminal Complaint, Ex. L). When Defendants asked Plaintiff who rented the room, Plaintiff answered that it was his room. After Defendants informed Plaintiff that they knew Valerie Gallegos was the only registered guest in the room, Plaintiff responded: "Okay. It[']s not my room." (Incident Report at 2, Ex. H). Defendants entered the room "to ensure there were no other subject's [sic] inside."[5] (Incident Report at 2, Ex. H). While inside the room, Defendants noted several items "in plain view . . . . [that are] commonly used to smoke illegal narcotics." (Incident Report at 2, Ex. H).

Defendants claimed that Plaintiff indicated he had been released from jail two days ago and stated that he would "test hot" if given a urinalysis, "indicat[ing] to [Defendants] that he had been using narcotics very recently." (Incident Report at 2, Ex. H).[6] Plaintiff stated that he had paid nothing to stay in the room and did not inform his probation officer where he had stayed the previous night. (See id.). At this point, Plaintiff was arrested for possession of drug paraphernalia, falsely obtaining services and probation violation. (See MR at 11 (citing Incident Report, Ex. H); see also Hackett Aff.; Ryan Aff.).

Plaintiff pled "not guilty" to the charges of possession of drug paraphernalia and falsely obtaining services. On May 23, 2006, the State dismissed the charge of Possession of Drug Paraphernalia. (See Case Notes at 2, Ex. K; Case Information, Ex. M). Following a trial on the same day, Plaintiff was found "not guilty" of the charge of Falsely Obtaining Services. (See id.).

### *Qualified Immunity*

---

[5]Plaintiff claims that Defendant Ryan entered the room while another officer stayed with Plaintiff outside of the room. (See Complaint at 6). Plaintiff apparently contends that Defendant Hackett did not arrive on the scene until after Defendant Ryan arrested Plaintiff. (See id.).

[6]Defendants further explained that they "knew [Plaintiff] used and sold drugs from our past dealings with him . . . ." (Hackett Aff., Ex. O; Ryan Aff., Ex. P).

Defendants assert that they are entitled to qualified immunity. Government officials "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Guffey v. Wyatt, 18 F.3d 869, 871 (10th Cir. 1994). Once a defendant raises the defense of qualified immunity, it is the plaintiff's burden to show that the law was clearly established when the alleged constitutional violation occurred, and to present facts or allegations sufficient to show that the official violated the law. See Guffey, 18 F.3d at 871.

## *Discussion*

*Plaintiff's Claim VI and Claim I - police misconduct; selective enforcement of the law*

In Claim VI, Plaintiff alleges that Defendant Ryan "intimidated the Plaintiff in an act of police misconduct . . . . [by] ma[king] it seem that if the Plaintiff was not suppos[d] to be at that room, that he would be going to jail." (Complaint at 8-9). Such allegations do not state a claim cognizable under 42 U.S.C. § 1983. The Court will dismiss Plaintiff's Claim VI as a separate § 1983 claim and consider its allegations as part of Plaintiff's Claim I.

The Court construes the allegations of Claim I as Plaintiff's claim that Defendants selectively enforced the law on the basis of race. The Equal Protection clause of the Fourteenth Amendment to the United States Constitution "prohibits selective enforcement of the law based on considerations such as race." Whren v. United States, 517 U.S. 806, 813 (1996). "A plaintiff alleging racial profiling in violation of the Equal Protection Clause must establish both a discriminatory effect and that the action was motivated by a discriminatory purpose." Starr v. Downs, 271 Fed.Appx. 746, 748 (10th Cir. Mar. 27, 2008) (unpubl.) (citing United States v. Armstrong, 517 U.S. 456, 465 (1996)). Here, Plaintiff has failed to meet his burden of establishing either a discriminatory effect

or that Defendants' actions were motivated by a discriminatory purpose. Accordingly, the Court concludes that Plaintiff's Claim I pursuant to § 1983 regarding the events of February 28, 2006 should be dismissed.

*Plaintiff's Claim V - unlawful seizure (initial detention)*

Plaintiff claims that Defendant Ryan unlawfully seized him when he "order[ed] the Plaintiff to hold up, and to have a set [sic] on the walk" outside the room. (Complaint at 8). In challenging the lawfulness of this seizure, Plaintiff alleges that Defendants lacked the reasonable suspicion required to conduct such a seizure without a warrant. (See MR Response). Defendants do not dispute that Plaintiff was seized when they initially encountered him outside the room.[7] Defendants apparently assert that reasonable suspicion justified Plaintiff's initial detention for questioning and/or investigation.

To justify an investigative detention for questioning, a detaining officer must have a reasonable articulable suspicion that the detainee has been, is, or is about to be engaged in criminal activity. Terry v. Ohio, 392 U.S. 1, 21 (1968); United States v. Ward, 961 F.2d 1526, 1529 (10th Cir.1992). The presence of reasonable suspicion is not determined by any one factor, but by the totality of the circumstances. Alabama v. White, 496 U.S. 325, 330 (1990).

Defendants were patrolling the area in response to complaints of drug activity. However, Defendants also knew that the hotel charged per occupant and required all room occupants to register.[8] Having spoken with hotel management, Defendants knew that there was only one

---

[7]Defendants reported that they "stopped [Plaintiff and two other individuals] in order to conduct an investigation into a possible charge of falsely obtaining services." (Incident Report at 2, Ex. H).

[8]Defendants were also aware of a recent burglary report at the hotel in which the offenders had forced entry into a room to use it without paying.

registered occupant, Valerie Gallegos, in room 115. At approximately 7:15 a.m., Defendants observed five individuals, including Plaintiff, exiting from room 115. One reasonable inference that Defendants could draw from this set of facts is that Plaintiff had stayed overnight in room 115 without paying for occupying the room. Under the totality of the circumstances, reasonable suspicion justified Defendants' initial detention of Plaintiff in order to investigate whether Plaintiff was, or had been, engaged in falsely obtaining services. Accordingly, Plaintiff's Claim V pursuant to § 1983 will be dismissed.

*Plaintiff's Claim VII - unlawful search*

Plaintiff alleges that Defendant Ryan conducted an unlawful search of room 115 under the pretext of a protective sweep. Defendants argue that Plaintiff's claim should be dismissed because they "did not conduct a search for weapons during this incident." (MR at 19). The Court finds that it need not address these arguments because, under the facts and circumstances of this case, Plaintiff lacked standing to challenge the constitutionality of Defendants' search of the room.

To assert a Fourth Amendment right to challenge Defendants' search of the room, Plaintiff must show that he had an "expectation of privacy in the place searched, and that his expectation [was] reasonable." Minnesota v. Carter, 525 U.S. 83, 88 (1998). "Fourth Amendment rights are personal, and, therefore, a defendant cannot claim a violation of his Fourth Amendment rights based only on the introduction of evidence procured through an illegal search and seizure of a third person's property or premises." United States v. Beckstead, 500 F.3d 1154, 1163 (10th Cir. 2007) (quotation omitted), cert. denied, 552 U.S. 1304 (2008). Here, Plaintiff was neither a registered nor paying occupant of the room. Indeed, Plaintiff explained that he paid nothing because he "did not stay at the room." (Complaint at 10 (Claim VIII)). Under the circumstances, Plaintiff fails to demonstrate that he had either an actual expectation of privacy in the room, or that his expectation

7

of privacy was reasonable. Accordingly, this claim will be dismissed because Plaintiff lacked standing to challenge the constitutionality of Defendants' search of the room.

*Plaintiff's Claim IX - unlawful arrest*

In Claim IX, Plaintiff contends that Defendants unlawfully arrested him on a charge of possession of drug paraphernalia, based on evidence found in room 115. Apparently, Plaintiff argues that Defendants lacked probable cause to arrest him on this charge because they "knew [that room 115] was not his room." (Complaint at 10 (Claim IX)). Defendants contend that probable cause justified Plaintiff's arrest on a charge of possession of drug paraphernalia.

The Fourth Amendment protects individuals from unreasonable seizures of person or property. See U.S. Const. amend. IV. A plaintiff may recover damages under § 1983 for wrongful arrest if he shows he was arrested without probable cause. See Lessman v. McCormick, 591 F.2d 605, 609-11 (10th Cir. 1979); see also Franklin v. Thompson, 981 F.2d 1168, 1170 n. 3 (10th Cir.1992). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." Johnson v. Lindon City Corp., 405 F.3d 1065, 1068 (10th Cir. 2005) (quotation omitted). The Court applies an objective standard based on the facts available to the arresting officer at the time the arrest occurred. See id. Thus, the Court considers "the circumstances as they would have appeared to prudent, cautious and trained police officers." United States v. Davis, 197 F.3d 1048, 1051 (10th Cir. 1999) (quotation omitted).

Defendants were patrolling the area of the America's Best Value Inn in response to complaints of drug activity. Defendants observed five individuals, including Plaintiff, exiting from room 115. After questioning Plaintiff, Defendant Ryan entered room 115 and found several items

"commonly used to smoke illegal narcotics." (Incident Report at 2, Ex. H). Plaintiff stated that he had been released from jail two days previously and would "test hot" if given a urinalysis, indicating to Defendants that he had used narcotics recently. In addition, Defendants were familiar with Plaintiff's history of drug use "from our past dealings with him . . . ." (Hackett Aff., Ex. O; Ryan Aff., Ex. P). Under the facts and circumstances available to Defendants, probable cause existed to arrest Plaintiff on a charge of possession of drug paraphernalia. Accordingly, Plaintiff's Claim IX pursuant to § 1983 will be dismissed.

*Plaintiff's Claim VIII - malicious prosecution*

Plaintiff claims that Defendants "filed a false criminal complaint alleging that the Plaintiff possessed drug paraphelia [sic] and falsely obtain[ed] services."[9] (Complaint at 10 (Claim VIII)). Defendants do not specifically address Plaintiff's claim that a false criminal complaint was filed against him, but contend that they had probable cause to arrest Plaintiff on both charges. (MR at 19). To the extent that Plaintiff asserts a constitutional claim pursuant to § 1983, it appears to be a claim of malicious prosecution.

A claim of malicious prosecution requires that five elements be met: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." Wilkins v. DeReyes, 528 F.3d 790, 799 (10th Cir. 2008) (citation omitted). In this case, Plaintiff's malicious prosecution claim fails because he does not satisfy the third element with respect to either criminal charge.

---

[9]The evidence shows that a criminal complaint was filed against Plaintiff on 2/28/06 by Complainant P.E. Hackett and approved by Raymond S. Torres. (See Ex. L).

As previously discussed, the Court found probable cause existed to support Plaintiff's arrest on a charge of possession of drug paraphernalia. (See discussion of Claim IX, supra). The Court also concluded that reasonable suspicion existed to justify Defendants' initial seizure of Plaintiff on a charge of falsely obtaining services. (See discussion of Claim V, supra). Following his initial seizure, Defendants questioned Plaintiff regarding who rented the room and how much Plaintiff paid for the room. Plaintiff's responses to these questions provided additional information allowing for reasonable suspicion to ripen into probable cause. Plaintiff fails to show that probable cause did not support his arrest on a charge of falsely obtaining services. Accordingly, Plaintiff's Claim VIII pursuant to § 1983 will be dismissed.

*Plaintiff's state law claims*

With the entry of this Memorandum Opinion and Order, all of Plaintiff's claims pursuant to § 1983 will be dismissed. Having dismissed all claims over which it has original jurisdiction, the Court will decline to exercise supplemental jurisdiction over any state law claims asserted by Plaintiff. Accordingly, any remaining state law claims will be dismissed without prejudice.

WHEREFORE,

IT IS ORDERED that Plaintiff's Claim I (as to February 28, 2006) pursuant to § 1983 and Plaintiff's Claims V through IX pursuant to § 1983 are **dismissed** with prejudice.

IT IS FURTHER ORDERED that Plaintiff's state law claims are **dismissed** without prejudice.

IT IS FINALLY ORDERED that any pending motions are **denied** as moot.

                                                    _____
                                                    UNITED STATES DISTRICT JUDGE